**SO ORDERED.**

**SIGNED this 21 day of January, 2010.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

IN RE:

| | |
|---|---|
| ALVIN JONES | CHAPTER 13 |
| PATRICIA JONES | CASE NO. 09-04701-8-RDD |
| DEBTORS | |

**ORDER DENYING MOTION FOR RELIEF FROM AUTOMATIC STAY
OF SECTION 362 OR IN THE ALTERNATIVE ADEQUATE PROTECTION**

Pending before the Court is the Motion for Relief from Automatic Stay of Section 362 or In the Alternative Adequate Protection filed by Ocwen Loan Servicing, LCC, Servicer for HSBC Bank USA, N.A. as Trustee for the registered holders of the Renaissance Home Equity Loan Asset Backed Certificates, Series 2004-4 ("Ocwen") filed on October 2, 2009 (the "Motion") and the Response to the Motion filed by Alvin Jones and Patricia Jones (the "Debtors") filed on October 13, 2009 (the "Response"). The Court conducted a hearing in Wilson, North Carolina on December 8, 2009 to consider the Motion and the Response.

The Debtors filed a petition for relief under Chapter 13 of Title 11 of the Bankruptcy Code on June 8, 2009. The Debtors own real property located at 118 Joy Avenue, Pikeville, North

Carolina 27863 (the "Property"). The Property is subject to a Deed of Trust recorded in the Wayne County Public Registry which secures a Note, dated August 24, 2004, in favor of Fidelity Mortgage of Ohio, Inc. in the principal amount of $150,000.00. Ocwen asserts that the note and deed of trust have been transferred and assigned to HSBC Bank USA, N.A. as Trustee for the registered holders of the Renaissance Home Equity Loan Asset Backed Certificates, Series 2004-4.

Pursuant to the Motion, Ocwen claims the Debtors have failed to make their mortgage payments outside of the Chapter 13 plan, as required by their plan. Upon information and belief, Ocwen contends the Debtors are in default $3,882.86 as of October 2, 2009.[1] The alleged arrearage consists of 3 payments from July 2009 through October 2009 in the amount of $1,519.60 each; 2 late charges for August 1, 2009 and September 1, 2009 in the total amount of $104.06; less $780.00 being held in suspense. The payoff on the note is approximately $143,653.15 and the scheduled value of the Property is $155,530.00. Ocwen argues that relief from the automatic stay should be granted based on the Debtors' failure to remain current on the note or, in the alternative, that Ocwen be granted adequate protection for its interest in the Property of the Debtors.

The Debtors do not dispute that they executed a note and deed of trust as alleged by Ocwen. However, the Debtors claim the monthly payment required by the note and deed of trust was modified and reduced from $1,519.60 a month to $778.30 a month commencing on March 1, 2009. In support of their Response, Mrs. Jones testified that she spoke with a representative from Ocwen named Maria and that Maria, on behalf of Ocwen, proposed a loan modification agreement for the Debtors. As consideration for the modification, the Debtors paid $1,090.08 to Ocwen and those

---

[1] This amount does not include attorney fees that have accrued on the account.

2

funds remain in the possession of Ocwen. Furthermore, the Debtors state that they are current on their payments to Ocwen based on the terms of the modification agreement.

As of the hearing date, Ocwen asserts the Debtors are delinquent $6,246.12. At the hearing, Ocwen failed to present any witnesses or provide any evidence related to HSBC's ownership of the note, its standing as servicer, or the basis of its Motion. Ocwen solely relied on the loan documents and the pleadings it filed. The Motion was not verified by an officer or agent of Ocwen.

Mrs. Jones testified at the hearing that on several occasions, she spoke with an Ocwen representative named Maria regarding modifying her loan. She stated that after speaking with Maria regarding a loan modification, she received a cover letter from Ocwen, dated January 9, 2009, a Loan Modification Agreement, and a Balloon Disclosure Notice.[2] *Exhibit A.* The cover letter states that the Debtor's monthly payment will be reduced from $1,612.57 to $1,090.08 and that interest will accrue at 6.25% for the life of the loan. Pursuant to the terms of the letter, the Debtors were to send a payment to Ocwen no later than January 28, 2009. The Loan Modification document further provides that after the initial payment of $1,090.08, due on or before January 28, 2009, the Debtors were to commence monthly payments in the amount of $778.30 commencing on March 1, 2009. Lastly, the Balloon Disclosure informs the Debtors that as of the final payment date, a lump sum balloon payment will be due on or before September 1, 2024. The agreement provides that an initial payment of $1,090.08 was to be made on or before January 28, 2009.

The Debtors missed the January 28, 2009 deadline. However, Mrs. Jones testified that Maria, the representative from Ocwen, called and asked the Debtors to send back the modification

---

[2]The Loan Modification Agreement and the Balloon Disclosure are not signed by a representative of Ocwen.

agreement and $1,090.80 even though the deadline had passed. Ms. Jones testified that Maria, from Ocwen, said the modification would be effective if signed and returned with the $1,090.08. She and her husband signed the documents and faxed them to Ocwen on February 2, 2009. Further, Mrs. Jones testified that she mailed a money order, purchased from Walmart, in the amount of $1,091.00 and the original modification agreement to Ocwen. Ocwen accepted the payment of $1,091.00 and the debtor stated she continued to make payments of $780.00 to Ocwen. In April 2009, contrary to the terms of the modification agreement, the male debtor received a call from Ocwen stating that the mortgage payments were in arrears and that Ocwen intended to foreclose on the note and deed of trust secured by the Property. The Debtors admit that they did not pay the May 2009 payment after the threat of foreclosure. However, Mrs. Jones stated that she and her husband have made the following post-petition payments to Ocwen: $780.00 on July 6, 2009, $780.00 on July 31, 2009, $780.00 on August 31, 2009, $780.00 on October 8, 2009, and $780.00 on October 28, 2009.

Based on the evidence presented by the Debtors, the Court finds that Ocwen is adequately protected. No cause exists to terminate the automatic stay. The Debtors testified that they are regularly sending a monthly payment of $780.00. Ocwen does not dispute receipt of the $780.00 payments identified by the Debtors and does not dispute receipt of the initial $1,091.00 and the Loan Modification Agreement signed by the Debtors in early February 2009. There is no evidence before the Court that Ocwen is not adequately protected.

Because of the conflicts in Ocwen's actions by tendering a loan modification agreement due by a date certain but then stating that the modification would be honored even if received past the January 28, 2009 deadline; receiving and accepting payments pursuant to the modification

agreement and then, after several months, declaring a default and NOT recognizing the modification agreement, the Court has concerns about Ocwen's inconsistent treatment of the Debtors.[3]

Furthermore, Ocwen claims that HSBC is the current note holder. However, the record fails to reflect that HSBC is entitled to enforce the note and deed of trust as Ocwen neglected to provide the Court with a copy of an assignment from Fidelity Mortgage of Ohio, Inc. to HSBC. Alternately, Ocwen failed to allege that HSBC was in possession of the original note and if such note was properly endorsed. *In re Lewis*, 2009 Bankr. LEXIS 3545 (E.D. Tenn. 2009)(allowing bank that was in possession of the original note with a proper endorsement without an assignment to be granted relief from the automatic stay). The copy of the note attached to the Motion does not show any endorsements. Therefore, there is nothing before the Court establishing that HSBC, in fact, has a legal interest to enforce the note. *See In re Wilhelm,* 407 B.R. 392 (Bankr. Idaho 2009).

With respect to Ocwen, even though the Debtors admitted that their payments are made to Ocwen, these statements are insufficient to establish that Ocwen has the authority to act for HSBC. Beyond a general statement in the introductory paragraph, Ocwen fails to provide any documentation, such as a servicing agreement, that Ocwen has the authority to act for HSBC. *See In re Jacobson,* 402 B.R. 359, 370 (W.D. Wash. 2009)(requiring a minimum of "an unambiguous

---

[3]Ocwen's record keeping and tactics have been questioned by other courts. *In re McKain,* 2009 Bankr. LEXIS 2519 (Bankr. E.D. La. 2009). The *McKain* case specifically references a number of cases in the Eastern District of Louisiana where Ocwen improperly administered loans or attempted to collect fees and costs to which it was not entitled. *Id.*

representation or declaration setting forth the servicing agent's authority from the present holder of the note to collect on the note and enforce the deed of trust").[4]

Therefore, the Motion for Relief from Automatic Stay of Section 362 or In the Alternative Adequate Protection is **DENIED**.[5]

**SO ORDERED**.

**END OF DOCUMENT**

---

[4] The Court deems it unnecessary to deny the Motion based on the lack of documentation that HSBC is the holder of the note or the lack of documentation that Ocwen has the authority to act on behalf of HSBC since other grounds exist for denial of the Motion.

[5] The decision by this Court to deny the pending relief from the automatic stay does not validate the terms of the Loan Modification Agreement. However, this ruling is limited to a finding that based on the specific facts presented, Ocwen's interest is adequately protected.